69 F.3d 537
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nina Marie MALONE, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY,* Defendant-Appellee.
 No. 94-6545.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1995.
 
 Before: MARTIN and BATCHELDER, Circuit Judges, and EDMUNDS, District Judge.**
 PER CURIAM.
 
 
 1
 Nina Marie Malone appeals the Secretary's determination that Malone was not disabled within the meaning of Section 223 of the Social Security Act, codified at 42 U.S.C. Sec. 423, and that she therefore was not entitled to social security disability benefits. Specifically, Malone argues that the Secretary failed to give proper weight to the opinion of her treating physician and failed to credit the testimony of her son and her ex-husband in determining that Malone was not entitled to disability benefits. Because we find the Secretary's decision to be supported by substantial evidence, we AFFIRM.
 
 
 2
 Malone claims she suffers from angina, dizziness, and cannot lift "anything." The medical records examined by the administrative law judge revealed that on April 28, 1991, Malone suffered an acute myocardial infarction and cardiac arrest due to ventricular fibrillation. She was quickly resuscitated, and immediately regained sinus rhythm. Shortly thereafter, Dr. Jim Jenkins, Malone's treating physician, found her having a decreasing amount of pain, alert, and able to give an "excellent history." Malone's only significant risk factor was that she was a heavy smoker. Dr. Jenkins subsequently transferred Malone to St. Thomas Hospital, under the care of Dr. Howard Walpole.
 
 
 3
 Upon arrival at St. Thomas, Malone was disoriented, nauseated, vomiting, and having generalized seizures. She was treated and her condition quickly improved. Malone was ultimately discharged on May 11.
 
 
 4
 On May 14, Malone was admitted to the emergency room again with a "burning pain" in both arms, which was initially diagnosed as another heart attack. However, Dr. Walpole's subsequent opinion was that the chest and arm pain had been noncardiac in origin. Dr. Walpole discharged Malone on May 21.
 
 
 5
 Over the next few months, Malone suffered from a variety of ailments, frequently visiting Dr. Jenkins at his office and the emergency room of the hospital. Dr. Jenkins referred Malone to a neurologist, Dr. David Uskavitch, who determined that Malone's dizziness may have been a result of an abnormality in the outer lining of the middle ear. Malone also saw a psychologist, Dr. Janice Barkley, on February 13, 1992. She also continued to see Dr. Walpole.
 
 
 6
 The reports contained in Malone's medical record indicate that Dr. Walpole was of the opinion that Malone suffered no impairment-related physical limitations as a result of her cardiac problems. Dr. Uskavitch's assessment of Malone's dizziness concluded that she suffered from "episodic vertigo," which limited her to lifting no more than twenty pounds, and that Malone could not work at an "elevated height." Psychologist Barkley found that Malone's ability to do work related activities was not affected by her mental health status, although Malone was slightly limited in the areas of mental concentration and persistence. Contrary to these opinions, in a September 16, 1992 letter Dr. Jenkins stated that Malone's chest pain, depression, joint pain, and dizziness made it very difficult if not impossible for her to have full time employment. At the time he wrote the letter, Dr. Jenkins had not seen Malone since May 11, 1992.
 
 
 7
 Malone filed her claim for social security disability benefits on December 21, 1991. A hearing was held before the administrative law judge on December 8, 1992. At that hearing, Malone introduced the letter from Dr. Jenkins, in which Dr. Jenkins gave his opinion that Malone could not function at a level required for her to return to her previous employment. In addition, Malone's son, William Parker, Jr., testified that Malone could not remember anything, was moody, and rarely left the house. Malone's former husband, William Parker, Sr., testified that Malone's memory was failing, she could not deal with the public, and that he would not hire her to work at his own office.
 
 
 8
 The administrative law judge found that Malone could perform light work that did not require working at elevated heights, and that her ailments did not prohibit her from performing work such as that which she had performed in the past. In so doing, the administrative law judge found that the subjective testimony of Malone's son and ex-husband was not entirely credible, and that Dr. Jenkins' letter dated September 16, 1992 was contradicted by the medical evidence, some of which was contained in Jenkins' own reports. On August 31, 1994, the United States magistrate judge issued a report which found that the administrative law judge's decision that Malone was not disabled was supported by substantial evidence on the record as a whole. The district court essentially agreed with the magistrate judge, finding that the record supported the administrative law judge's determination that Dr. Jenkins' opinion was at odds with his own medical reports and with Dr. Walpole's assessment. The district court also found that the administrative law judge could have found that the testimony given by Malone's ex-husband and son were not supported by the objective medical evidence, and that Malone's son's testimony was inconsistent with Malone's own reports to Dr. Barkley concerning her daily activities. Malone filed a timely appeal to this Court.
 
 
 9
 We review the findings of the Secretary to determine whether they are supported by substantial evidence. Wyatt v. Secretary of Health and Human Servs., 974 F.2d 680, 683 (6th Cir.1992). We must also ensure that the correct legal standards were applied in each case. Landsaw v. Secretary of Health and Human Servs., 803 F.2d 211, 213 (6th Cir.1986). We do not resolve conflicts in the evidence, nor do we make credibility determinations. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Determining whether substantial evidence exists requires examination of the record as a whole, and our review "must take into account whatever in the record fairly detracts from its weight." Shelman v. Heckler, 821 F.2d 316, 320 (6th Cir.1987) (citations and internal quotations omitted).
 
 
 10
 Malone first takes issue with the Secretary's determination that Dr. Jenkins' opinion as to her disability was not credible. She argues that the medical opinion of the treating physician is entitled to great deference and that reliance on the opinion of the treating physician over the contrary opinion of a consulting physician is particularly appropriate where the claimant's impairment fluctuates over time. See Walker v. Secretary of Health and Human Servs., 980 F.2d 1066, 1070 (6th Cir.1992); Lashley v. Secretary of Health and Human Servs., 708 F.2d 1048, 1054 (6th Cir.1983). According to Malone, Dr. Jenkins was the only physician who understood the complete picture, and further understood the impact her physical impairments had on her mental health. She asserts that the Secretary simply failed to see that Dr. Jenkins' opinion was entitled to a greater weight because none of the other physicians based their opinions on her entire physical and mental health problems.
 
 
 11
 We disagree. Although the treating physician's opinion is normally entitled to substantial deference, the administrative law judge is not bound by that opinion. Shelman, 821 F.2d at 321. The treating physician's opinion must be supported by sufficient medical data. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). If the treating physician's opinion is not supported by objective medical evidence, the administrative law judge is entitled to discredit the opinion as long as she sets forth a reasoned basis for her rejection. Shelman, 821 F.2d at 321.
 
 
 12
 Here, the administrative law judge discredited the opinion contained in Dr. Jenkins' September 16 letter. As the administrative law judge noted, this opinion was contradicted by Dr. Jenkins' own medical reports and by the opinions of all the other medical professionals involved in Malone's treatment, including Dr. Walpole's conclusions, the cardiac specialist. Our review of the record leads us to conclude that the administrative law judge's findings were supported by substantial evidence. As noted previously, all of the other treating physicians and psychologist Barkley were of the opinion that Malone was capable of normal function. Dr. Jenkins' own records indicate that Malone's condition was improved. On these facts, we find that the administrative law judge was entitled to discredit Dr. Jenkins' opinion, contained in the September 16 letter, that Malone was incapable of returning to her position as supermarket cashier.
 
 
 13
 Malone also argues that the Secretary erred by discrediting the testimony of her ex-husband and her son. We disagree. Perceptible weight must be given to the testimony of lay witnesses where it is consistent with medical evidence. Lashley, 708 F.2d at 1054. Here, however, credible medical evidence contradicts both witnesses' testimony. Each witness essentially testified that Malone was totally disabled. However, the record shows that, during at least some of her several visits with Dr. Jenkins, Malone told Dr. Jenkins that she was doing well, had discontinued all her medications, and was not having any shortness of breath, dizziness, or chest pain. Further, Malone told the psychologist Barkley, on February 13, 1992, that she walked one-half mile to one mile three days a week, prepared her own meals, did her laundry, did her grocery shopping, among other things. This record directly contradicts Malone's son's testimony that his mother never left the house, did not care for herself, and literally slept all day long. Similarly, evidence in the record supports the Secretary's conclusion that Malone's ex-husband's testimony was not credible.
 
 
 14
 In sum, we find that substantial evidence supported the administrative law judge's determination that Dr. Jenkins' September 16 letter and the lay witnesses' testimony were not entirely credible. Accordingly, we AFFIRM.
 
 
 
 *
 Pursuant to the Social Security Independence and Program Improvements Act of 1994, Public Law No. 103-296, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995. Accordingly, the Commissioner of Social Security is substituted for the Secretary of Health and Human Services as defendant in this suit under section 106(d) of the Act
 
 
 **
 The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation